FREDERICK MEYER *et al.*

*v.*

PHILIP HEHNER.

*Filed at Mt. Vernon October 2, 1880.*

1. AGENCY—*right of agent to receive money for principal.* A person having money due to him in this State gave a power of attorney to A, conferring upon him full and complete power to collect and receive any and all moneys, with power of appointing one or more attorneys under him in behalf of the principal, which appointment was duly made in writing by A, of B, a brother-in-law of the principal. The latter, after this, wrote a letter to his debtor, stating that he had withdrawn his letter of attorney to A, and requested the debtor, instead of making payment, to get an interest-bearing certificate of deposit, which he would take in payment. B afterwards notified the debtor not to deposit the money in bank, but to pay it to him, stating that the principal had so ordered, and the sum of $4500 was thereupon paid to B, which

was indorsed on the debtor's note, then in B's hands: *Held,* the payment was properly made to B as the duly authorized agent of the creditor.

2. In such case the mere request of the creditor, in his letter to his debtor, to deposit the money in bank and take a certificate of deposit, did not amount to a revocation of B's authority to receive the money, especially when it was stated in the letter that B then held his letter of attorney. The debtor was placed under no legal obligation to procure such certificate of deposit instead of paying the money to the agent.

APPEAL from the Appellate Court for the Fourth District; the Hon. TAZEWELL B. TANNER, presiding Justice, and the Hon. JAMES C. ALLEN and Hon. DAVID J. BAKER, Justices; —heard in that court on appeal from the Circuit Court of Monroe county; the Hon. AMOS WATTS, Judge, presiding.

Mr. THOMAS G. ALLEN, for the appellant:

It is a familiar rule, growing out of the doctrine of acquiescence in the acts of an agent, that when the principal has been informed of what has been done, he must dissent and give notice of it within a reasonable time, and if he does not, his assent and ratification will be presumed. Livermore on Principal and Agent, 396; 2 Kent's Com. (12th ed.) 615; Story on Agency, § 239; Chitty on Contracts, p. 202; Parsons on Contracts, vol. 1, p. 82; *Williams* v. *Merritt,* 23 Ill. 623; *Ward* v. *Williams,* 26 Ill. 447; *Darst* v. *Gale et al.,* 83 Ill. 142; *Gold Mining Co.* v. *National Bank,* 6 Otto, 644; *Bredin* v. *Dubarry,* 14 Sergeant & Rawle, 27; *Newell* v. *Hurlbut,* 2 Vermont, 351; *Cairnes* v. *Bleecker,* 12 Johns. (N. Y.) 300; *Williams* v. *Walker,* 2 Sandf. Ch. 325; 2 Kent's Com. 620.

When the acts of an agent will bind the principal, his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time and constituting a part of the *res gestæ.* 1 Greenlf. Ev. 113; Story on Agency, secs. 134–137; *Denman* v. *Bloomer,* 11 Ill. 192; *Indianapolis and St. Louis Railroad Co.* v. *Miller,* 71 Ill. 474; *Allin et al.* v. *Millison,* 72 Ill. 201; *Noble et al.* v. *Cunningham,* 74 Ill. 53; *Linblom* v. *Ramsey,* 75 Ill. 250; *United States Life Insurance Co.* v. *Advance Co.,* 80 Ill. 559; *Harris*

v. *Zimmerman et al.* 81 Ill. 413. And the rule of law is so recognized in the courts of other States. We cite *North River Bank* v. *Aymar*, 3 Hill, 262; *Sandford* v. *Handy*, 23 Wend. 260; *Fogg* v. *Griffin*, 2 Allen, 1; *Beard* v. *Kirk*, 11 N. H. 395; *Morgan* v. *Stell*, 5 Binney, 305; *Hancock* v. *Byrne*, 5 Dana, 513; *Tier* v. *Sampson*, 35 Vt. 179; *Franklin Bank* v. *Steam Navigation Co.*, 11 Gill & J. 28; *Lamothe* v. *St. Louis Marine Railway*, 17 Mo. 204.

The Federal Supreme Court, in the *Cliquot Champagne case*, 3 Wallace, 140, stated the rule to be that "whatever is done by an agent, in reference to the business in which he is at the time employed, and within the scope of his authority, is said or done by the principal, and may be proved as well in a criminal as in a civil case, in all respects, as if the principal were the actor or the speaker." And it was again so held in *Butler* v. *Maples*, 9 Wallace, 770, *Insurance Co.* v. *Wilkinson*, 13 Wallace, 235, and *Hatch* v. *Coddington*, 5 Otto, (95 U. S.) 56.

Mr. HENRY C. TALBOTT, and Mr. WM. WINKELMAN, also for the appellant.

Messrs. G. & G. A. KŒRNER, and Mr. EUGENE C. TITTMAN, for the appellee:

The law is, as laid down by Story on Agency, that notice of revocation, which means a notice that it is no longer safe to treat with him theretofore recognized as agent, may be express, by a formal declaration, or by an informal writing, or by parol, or it may be implied from circumstances. If, by the exercise of ordinary caution, the debtor would be led to a knowledge of the revocation, it would have been sufficient. *Williams* v. *Birbeck*, 1 Hoff. Ch. 359.

In the case at bar, the debtor is directed to pay the money " *only* " in a certain manner indicated. This leaves no option, as is supposed by appellants' attorneys, and is widely different from cases referred to, in which it has been held that a man

may lawfully appoint two attorneys to collect, and his debtor may safely treat with either. See Wharton on Agency and Agents, sec. 409, where it is said: "The principal may, by notice, invalidate all subsequent payments from a third party to agents. * * Payment made to such agent, after such notice, is a nullity, and the principal may recover the debt, notwithstanding such payment." See also *Mann* v. *Forrester,* 4 Camp. 60 ; *Frazier* v. *Erie Bank,* 8 W. & S. 18.

A payer makes payment at his peril, and is, when paying to a third person on account of another, bound to know that the person to whom he pays has authority to receive. *Holmes* v. *Field,* 12 Ill. 424; *Dutcher* v. *Beckwith,* 45 Ill. 460.

These cases decide, that if a person, innocently and in good faith, pay to one not having authority, though he seemingly has it and the payer thinks it exists, it is no justification, and he can not resist a collection of the same amount by the person truly entitled to it. How much stronger is the case under consideration, where the payer was distinctly notified *not* to pay to the one assuming authority to collect.

So, in an action by an indorsee of a note against the maker, it is competent for the latter to prove, and it would constitute a good defence to show that plaintiff held the note for collection only, and as agent of the payee, and that the *payee had notified him not to pay the money to the indorsee. Barker* v. *Prentiss,* 6 Mass. 430.

Possession of the paper, unindorsed as this was, not coupled with authority to collect it, does not justify the debtor in paying to the holder of the note. *Doubleday* v. *Kress,* 50 N. Y. 410.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

This is a bill in chancery, brought by appellee against appellants, to foreclose a mortgage upon certain property in Monroe county, Illinois.

The only question in dispute relates to the amount due upon the mortgage.

The mortgage and note were executed December 5, 1866, for the sum of $6000, payable three years after date, to bear 10 per cent interest, payable annually. On December 5, 1869, by the agreement of the parties indorsed upon the note, the time of payment was extended two years, at the same rate of interest, payable annually. The interest seems to have been paid promptly up to December 5, 1874. On the 9th of December, 1875, the appellants paid to Eugene Walter, as the attorney in fact of appellee, the interest accrued for the past year, and $4500 upon the principal, and made an arrangement to extend the time of payment of the remaining $1500 for another year, at the rate of 7 per cent per annum, and there was indorsed upon the back of the note the following:

" Received, St. Louis, December 9, 1875, of Fred. and Joseph Meyer, $4500, on account of the within note. Balance of $1500 is hereby extended by mutual consent, for one year, to-wit: December 5, 1876, with interest payable annually, at the rate of 7 per cent per annum.

(Signed.)                          PHILIP HEHNER,
                              Per Eug. Walter, attorney in fact.

                    FRED. MEYER, JOSEPH MEYER,
                                      Per Jacob Meyer."

This payment Hehner repudiates, and refuses to allow the same as a credit upon the note.

The circuit court, in settling the amount of the decree, refused to allow appellants the benefit of this payment, and the decree of the circuit court was affirmed by the Appellate Court, and the case is brought here by appeal.

The only question in the case is, whether appellants were authorized, at the time this payment was made, to make the payment to Eugene Walter, as the agent or attorney of appellee. There is no dispute about the facts.

Eugene was a brother-in-law of appellee, and was doing business in the city of St. Louis as one of the firm of Kleinschmidt & Walter. Appellee was in Germany, and from 1870 had transacted his business in this country through agents. Robert Barth, Esq., held a general power of attorney from 1867 until the 12th day of June, 1875. While Robert Barth held the position of general agent of Hehner, the business of receiving the interest upon this note was usually transacted by Eugene Walter, a brother-in-law of Hehner. The indorsement on the back, of the interest paid at the end of 1869, is signed by Barth, as attorney in fact; so also was the indorsement of the payment of interest at the end of 1874; but while that was so, the receipts which were given for the payment of interest December 4, 1872, December 1, 1873, and December 5, 1874, were signed "Philip Hehner, per Eug. Walter." In other words, in point of fact the debtors were in the habit of paying over the interest to Eugene Walter, the brother-in-law of Hehner, with the approbation of Barth, and taking his receipts, and thereupon Barth indorsed the interest upon the note which was held in his possession, Hehner being in Germany, and all this was done in accordance with verbal instructions given to Meyer by Hehner before he went to Germany.

Robert Barth, Esq., held the power of attorney from Hehner, dated February, 1867, until June 12, 1875. This power of attorney was under seal, and was very full, comprehensive and specific, authorizing him, among other things, to demand, receive, sue for and recover each and every sum of money that might become due to Hehner from any person in Missouri or elsewhere; and receipts and acquittances, and releases, to give and execute, acknowledge and deliver; and also conferring upon him power to appoint one or more attorneys under him to act in behalf of Hehner in this regard.

On the 12th of June, 1875, Barth delivered over this power of attorney to Eugene Walter, with an indorsement on it,

under seal and in writing, by which he, by the authority conferred by the foregoing letter of attorney, did make, appoint and substitute Eugene Walter to be the attorney in fact of Philip Hehner, " to do, execute and perform all such acts, deeds, matters and things necessary to be done and performed for effecting the purposes in said letter of attorney mentioned, as fully and as perfectly, in all respects and intents and purposes," as he himself might or could do by virtue of said power of attorney.

On the 11th of November, 1875, appellee wrote a letter at Weisbaden, Germany, addressed to J. Meyer, Smith Landing, Illinois, in which, after stating his willingness to extend the time of payment of the principal of this note, at interest at 7 per cent, he said : " Should you * * * desire to pay, I beg you to pay the principal and interest, when due, only in this wise,—that you deposit in the German Savings Institute, St. Louis, for six months, in your name, at 6 per cent. You will then kindly give me immediate notice, and I will at once make arrangements that, in return for the certificate of deposit,—which you will assign to me,—the deed of trust and principal note shall be delivered to you. If you do not pay the principal, you will in future do the same in relation to the interest. This you will deposit in the said bank on six months' time. I will send you receipts, under my own hand, for which you will transfer the certificate to me. Since some months I have withdrawn my letter of attorney from Mr. Barth, because he is compelled to relinquish private business on account of ill health. My brother-in-law, Eugene Walter, now holds my letter of attorney. If you desire to answer, you may give your letter to my brother-in-law to be forwarded. It would be better, however, [to send] directly to me, as I have not heard from him for months, and I do not even know how he is getting along. In conclusion, I would again request you to pay only in the manner above indicated.

(Signed.)                                   PH. HEHNER."

This letter was received by Jacob Meyer before he made the payment which is now in dispute. Although a German by birth, he read writing imperfectly. He took this letter to Eugene Walter, in St. Louis, and showed it to him, and Walter read it to him. Walter at that time had the note and mortgage in his possession, and, as Meyer swears, upon reading the letter, Walter told him that he "had loaned out the money to other parties, and had had instructions *since that;*" and, according to the testimony of Walter, he told Meyer that "he had made arrangements in regard to the money which made it necessary for Hehner's interest to receive this money at that time;" and thereupon Meyer got the money and made the payment, and took the receipt above stated from Walter.

It is strenuously insisted by appellee that this letter was, in substance, a revocation of the power of Walter to receive the money, and that appellants had no lawful authority or right to pay the money to Walter.

While the appellee may, in writing the letter, have intended in that way to divert the money coming from appellants from the channel through which it had formerly passed, and to arrange to receive it without the intervention of Walter, still that intention is not distinctly made known in the letter. There is no intimation in the letter that Walter's power to act in behalf of Hehner was qualified or impaired in the slightest degree. On the contrary, he said expressly "my brother-in-law, Eugene Walter, *now holds my letter of attorney.*"

The fair meaning of that sentence is, that my brother-in-law has a full power of attorney, and is authorized to act for me in this and every other business that I have in America. The letter does undoubtedly *request,* as a favor, that appellants, instead of paying the money, should buy a certificate of deposit, and hold that until appellee should make arrangements to take it from them. This was a request with which appellants were in nowise bound to comply. Their legal

liability was to pay the money to appellee, or to his author-ized agent. There was no prohibition in the letter against paying the money to Walter any more than there was against paying it to appellee in person, but he urged them that they should not pay the money, but should make the payment through the instrumentality of a certificate of deposit,—not only that, but a certificate of deposit *bearing interest.* Whether such a certificate of deposit could have been pro-cured from the bank or not, doth not appear, and, if it could, appellants were under no obligation to buy a certificate of deposit. Appellee had the right to *change* these directions after he wrote that letter, and, unless the powers of Walter were revoked or qualified, appellee had a right to change those directions, *through his attorney in fact, Walter,* as effec-tually as he might have done in person. Had Walter, at the time of this payment, directed appellants to pay the money to him, and warned them not to deposit it in the bank, and had appellants persisted in doing so, and bought a certificate of deposit, and notified appellee by letter, and had the bank failed before the response from appellee, and before the cer-tificate could, in the mode proposed, have been transferred to appellee, in such case appellee could have said: "True, I wrote you a request to buy the certificate of deposit at interest, and my purpose was to have my money bear interest, instead of lying idle during the time of correspondence, but I after-wards, by my agent, (who, as I notified you, held my letter of attorney,) expressly retracted that request, and warned you not to deposit in that bank at my risk." Under such cir-cumstances, it is plain appellants would have been chargeable with the loss. They were not bound to take that risk.

Under all the circumstances, we can not doubt that appel-lants had a lawful right to make the payment in question to Eugene Walter, and that they are entitled, in adjusting the amount due upon the mortgage, to a credit for the amount of money at that time paid to Walter.

The decree of the circuit court was for too large an amount, and for that reason the judgment of the Appellate Court must be reversed, and the cause remanded to that court for further proceedings in accordance with this opinion.

*Judgment reversed.*